UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
STEPHEN PACE and PALMINA PACE a/k/a   :
PAM PACE,                             :
                                      :
              Plaintiffs,             :    08 Civ. 10996 (JSR)
                                      :
              -v-                     :    MEMORANDUM
                                      :
GEORGE B. SCHWARTZ,                   :
                                      :
              Defendant.              :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

Plaintiffs Stephen and Palmina Pace brought this action against defendant George Schwartz, alleging wrongful conduct on Schwartz's part in handling a number of paintings by Stephen Pace that had been consigned to him for exhibition and sale. By Order dated April 13, 2009, the Court granted in part and denied in part Schwartz's motion to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6), leaving intact plaintiffs' second, fourth, fifth, and sixth causes of action, for, respectively, breach of contract, replevin, injunctive relief, and breach of fiduciary duty. After a succession of delays and disputes regarding discovery, each side moved on October 13, 2009 for summary judgment on the replevin claim, and defendant again moved to dismiss the claim for permanent injunctive relief. Additionally, by motion dated October 26, 2009, plaintiffs sought a preliminary injunction and a temporary restraining order to enjoin Schwartz from disposing of consigned paintings during the pendency of this litigation. Oral argument on the above motions was held on November 20, 2009, and by Order dated

November 30, 2009, the Court denied all open motions.  This
Memorandum states the reasons for these latest rulings.

While this Memorandum assumes familiarity with the underlying
allegations and prior proceedings, by way of brief background it
should be noted that this litigation traces back to an agreement
between the Paces and Schwartz that was executed on January 6, 2007
(the "Consignment Agreement"), which in its initial form provided in
relevant part as follows,

> 1. FOR A PERIOD OF TEN YEARS FROM TODAY'S DATE, THE [STEPHEN PACE] PAINTINGS LISTED ON THE ATTACHED EXHIBIT WILL BE THE RESPONSIBILITY OF GEORGE SCHWARTZ TO SELL IN CALIFORNIA.
>
> 2. SCHWARTZ WILL PAY ALL SHIPPING AND STORAGE COSTS TO CALIFORNIA.
>
> 3. SCHWARTZ WILL ARRANGE FOR COMMERCIAL (AND POTENTIAL MUSEUM) EXHIBITIONS AND SHOWS OF STEPHEN PACE WORKS IN CALIFORNIA COMMENCING AS SOON AS POSSIBLE, AND WILL BEAR THE COSTS OF THIS.
>
> 4. THE INVENTORY NUMBERS AND NET PRICES PAYABLE TO PACE FROM THE SALE OF THESE PAINTINGS ARE LISTED ON THE ATTACHED EXHIBIT.
>
> 5. PAYMENT TO PACE WILL BE MADE PROMPTLY UPON SALE OF EACH PAINTING, AFTER DEDUCTING ANY FRAMING COSTS.
>
> 6. THE DATE OF THIS AGREEMENT IS JANUARY 6, 2007.

Pls' Statement of Undisputed Facts ("Pls. 56.1") ¶ 7; Def's Statement
of Undisputed Material Facts ("Def. 56.1") ¶ 5.  Thereafter, the
parties executed two subsequent amendments to this agreement, which
permitted the donation of three paintings to enhance Mr. Pace's
artistic reputation and removed the restriction on transferring the

2

paintings outside California.  Pls. 56.1 ¶¶ 9-10; Def. 56.1 ¶¶ 15, 19.

The Paces contend they are entitled to summary judgment on their replevin claim because the Consignment Agreement created an agency relationship that, despite contractual provisions to the contrary, is terminable at will as a matter of law.  Specifically they argue that (1) Schwartz, as consignee under the Consignment Agreement, is the Paces' agent; (2) principals, as a matter of law, are free to terminate an agency relationship at any time, despite any agreement between the principal and agent to the contrary; and (3) by demanding return of the paintings, the Paces have terminated Schwartz's agency and therefore now have an immediate and superior right to possess these paintings, to which they hold title, even if they might be liable in damages to Schwartz for breaching the Consignment Agreement.  Putting aside that this argument was seemingly raised for the first time in the instant motion practice, the argument misstates the kind of agency here created under applicable New York law.  As the Appellate Division has made clear, a consignment relationship is not one of agency simpliciter, but rather is "agency with a bailment."  Rahanian v. Ahdout, 258 A.D.2d 156, 159 (N.Y. App. Div. 1999) (emphasis added); accord, e.g., United States v. Nektalov, 440 F. Supp. 2d 287, 298 (S.D.N.Y. 2006).  Thus, as the Rahanian court noted, such an agency relationship is terminable at will only "in the absence of a contrary provision" in the consignment agreement, 258 A.D.2d at 159 (emphasis added), whereas here, just

3

such a provision is in place.[1] See also, e.g., Lion v. Lilienfeld, 30 N.Y.S.2d 866 (Sup. Ct. 1941) (holding that defendants, who were consigned paintings for exhibition and sale in their art gallery, were entitled to proceed with planned exhibition of these paintings despite consignor's demand for their return and consignment agreement's silence on its duration). As the foregoing authorities recognize, contracts providing for the maintenance, possession, or control of valuable property often present considerations that take such cases outside the kinds of pure agency relationships that might be construed as terminable at will.

---

[1] For the proposition that a consignment agreement of a fixed term is nonetheless terminable at will by the consignor, the Paces cite two lower court cases that, upon inspection, are readily distinguishable. The court in the first such case, Kerr S.S. Co. v. Kerr Navigation Corp., 113 Misc. 56 (N.Y. Sup. Ct. 1920), while stating that "a principal has power to revoke a simple agency even if created by contract for a definite time subject only to his liability to respond in damages for breach of his contract," id. at 61, nonetheless granted the agent's request for an injunction restraining the principal steamship corporation from interfering with the agent's exclusive right under the agency agreement to possess, manage, and control certain steamships up until a date specified by that agreement, id. at 63-65. And the second case, Smith v. Conway, 198 Misc. 886 (N.Y. Sup. Ct. 1950), while stating broadly that "[e]ven in commercial and other business dealings a principal, at least generally, is permitted to revoke an agency when he pleases, even though he has contracted with the agent for a definite period of time, for the reason that it is deemed contrary to public policy for a principal to have an agent forced upon him against his will," id. at 888, actually presented the question of whether a judge should be required to maintain the employment of a clerk whose services he no longer desired, and thus quite clearly involved considerations distinct from those raised by the Consignment Agreement here.

4

However, it does not follow from the fact that the Consignment Agreement is for a fixed term that Schwartz is entitled to his cross-motion for summary judgment, because genuine factual disputes remain as to whether the Consignment Agreement vests Schwartz with a superior possessory right for the duration of the agreement. The Consignment Agreement makes no mention of exclusivity, and as the Court noted in its April 13 Order, none of its terms are per se incompatible with reading the agreement as nonexclusive. Thus, resort to extrinsic evidence would be necessary to support a finding of exclusivity, and the underlying facts are sharply contested by the parties. Moreover, if Schwartz materially breached the Consignment Agreement in any of the myriad ways alleged in the complaint, Schwartz would no longer be entitled to any exclusive possessory rights that might otherwise exist while the agreement is in force. But numerous factual disputes remain as to whether any such breach occurred.

For the foregoing reasons, the Court denied both parties' summary judgment motions on the replevin claim.

Schwartz also moved to dismiss the Paces' claim for a permanent injunction on the ground that "injunction is a remedy and not a separate cause of action." Def's Mem. in Support of Mot. for Summary Judgment and To Dismiss 20 (quoting Lekki Capital Corp. v. Auto. Data Processing, Inc., 2002 WL 987147, at *3 (S.D.N.Y. May 14, 2002)). This is true but irrelevant. The fact that plaintiffs have pleaded their request for injunctive relief as a separate claim

5

rather than as a part of the prayer of relief in no way disentitles them to seek injunctive relief. And since the request for injunctive relief is for the Court, not the jury, there is no potential for confusion arising from its misplacement.

Finally, nearly a year after filing their complaint, the Paces moved for a temporary restraining order and preliminary injunction to prevent Schwartz from transferring or disposing of the consigned paintings <u>pendente lite</u>. The papers supporting this application contain a welter of allegations, including that (1) Schwartz loaned eleven consigned paintings for an exhibition at Fryeburg Academy, a Maine boarding school; (2) Schwartz "traded" or sold nine consigned paintings to John Day[2]; (3) Schwartz listed his own name as "donor" in gift documents executed in connection with the donation of certain consigned paintings, indicated that a painting was donated in honor of Day, and failed to notify the Paces of these donations for four months; and (4) Schwartz represented himself as the owner of the consigned paintings to a gallery owner, Karin Wilkes, with whom he offered to trade certain consigned paintings for other paintings owned by Mr. Pace, and suggested that Wilkes contact Mr. Pace to lower the price for his artworks so that Schwartz could

---

[2] John Day, a mutual friend of the Paces and Schwartz, introduced the parties to each other and was involved with the genesis of the Consignment Agreement. Day directs the Fryeburg Academy's Palmina F. and Stephen S. Pace Galleries of Art. Aff. of John M. Day in Support of Mot. for Summary Judgment and To Dismiss ¶¶ 3-7.

trade consigned artworks for other of Mr. Pace's paintings that he preferred to own.

Schwartz disputes the facts underlying these claims. But even if the Paces' account is assumed to be true in its entirety, the Paces have made no showing that any further dispositions of the paintings are likely to take place pending litigation. See Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (irreparable harm is not present unless plaintiff shows he "will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm" (quoting Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007)) (internal quotation marks omitted)). To the contrary, Schwartz has attested in a sworn affidavit that that no painting has been transferred or encumbered during the course of this litigation and that he does not intend to make any transfers while litigation is pending. Aff. of George B. Schwartz, 11/9/09, ¶¶ 13-14; see also Decl. of Malcolm S. Taub, 10/13/09, Ex. J (Deposition of George B. Schwartz) 135 (noting that there is a cloud on the title of the disputed artworks while this litigation is pending). Moreover, nearly all of the conduct that the Paces describe took place before the complaint was filed and was known to them. Their failure to seek preliminary injunctive relief earlier belies their claims of irreparable harm. Finally, since the trial of this case is firmly scheduled to start on February 8, 2010, it would be imprudent for the Court to devote judicial

7

resources to resolving these contested collateral issues when the underlying merits will shortly be determined.

Thus, for the foregoing reasons, the Court hereby confirms the rulings in its November 30 Order.

Dated: New York, NY
January 20, 2010

JED S. RAKOFF, U.S.D.J.